IN RE the MARRIAGE OF:

Timothy CEPUKENAS, Petitioner-Respondent,

v.

Shelli L. CEPUKENAS, Respondent-Appellant.†

Court of Appeals

*No. 97–1815. Submitted on briefs June 16, 1998.—Decided July 29, 1998.*

(Also reported in 584 N.W.2d 227.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Michael R. Phegley* of Racine and *Gai Ann Lorenzen* of Waterford.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Barbara J. Stippich* of *Richard J. Podell & Associates, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J.   The issue in this case is whether a Wisconsin trial court has competency to proceed and modify another state's child support order when neither the father, the mother nor the child resides in that issuing state any longer and the party seeking modification is a Wisconsin resident. We conclude that pursuant to ch. 769, STATS. (the Uniform Interstate Family Support Act), a Wisconsin court may modify the child support order of another state only if allowed pursuant to § 769.611, STATS. Because the conditions in § 769.611 have not been met, we affirm the trial court's order that it was without authority to act.

The facts relevant to this appeal are as follows. In 1992, Shelli L. and Timothy Cepukenas were granted a judgment of divorce by a Virginia state court. The judgment of divorce granted the parties joint custody of their only daughter, with primary placement awarded to Shelli. Also, the court ordered that Timothy pay $400 a month in child support. Shelli and her daughter moved back to Wisconsin, where they presently reside. Timothy eventually moved to Delaware for work-related reasons.

In 1997, Shelli filed an order to show cause in a Wisconsin court requesting modification of the Virginia child support order. She also obtained personal service of Timothy. Shelli asked that pursuant to Wisconsin law Timothy's child support obligation be modified to 17% of his gross income or $400 per month, whichever was greater. Further, Shelli asked that Timothy provide dental insurance for the minor child and that his child support obligation be paid directly from his employer by wage assignment.

The court found that it had personal jurisdiction over Timothy, a nonresident, under § 769.201, STATS. It also concluded that Timothy was no longer a resident of

Virginia. Nonetheless, it concluded that because Shelli was a resident of Wisconsin, § 769.611(1)(a), STATS., precluded the court from modifying the child support order. It opined that under § 769.611, Shelli could only seek relief in Delaware, where Timothy resided, or Virginia, the issuing state. This appeal followed.

█

Timothy does not contest the trial court's finding that he is subject to personal jurisdiction in Wisconsin under § 769.201, STATS. And we assume arguendo that Timothy is no longer a resident of Virginia, the issuing state, but of Delaware. Thus, the sole remaining issue is whether § 769.611, STATS., curtails the Wisconsin court's power to revise the Virginia child support order. Statutory interpretation is a question of law which we review de novo. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

█

Shelli initially contends that Wisconsin courts have subject matter jurisdiction to modify the order because it is an action affecting the family. We agree. "Subject matter jurisdiction is defined as the power of the court to entertain a certain type of action." *Kohler Co. v. Wixen,* 204 Wis. 2d 327, 336, 555 N.W.2d 640, 644 (Ct. App. 1996). Without question, Wisconsin courts have subject matter jurisdiction over all actions affecting the family, whether such orders are entered in this state or elsewhere. *See* §§ 767.01 and 767.02(1)(i), STATS. And child support is an action affecting the family. *See* § 767.02(1)(f).

█

But just because a court has subject matter jurisdiction over an action does not mean it can exercise its judicial powers. The court must also have competency to proceed. Competency is not synonymous with sub-

ject matter jurisdiction. *See Kohler*, 204 Wis. 2d at 336, 555 N.W.2d at 644. Competency is a narrower concept. In Wisconsin, competency is defined as the power of the court to exercise its subject matter jurisdiction in a given matter. *See id.* So although a court is vested with subject matter jurisdiction by the constitution, the legislature may enact statutes limiting a court's exercise of subject matter jurisdiction. *See id.* Such a legislative enactment affects that court's competency to proceed rather than its subject matter jurisdiction. *See id.* at 336–37, 555 N.W.2d at 644.

The case at bar involves the modification of a child support order issued in another state. We have already stated that Wisconsin courts have subject matter jurisdiction over all child support orders, including those issued by other states. *See* §§ 767.01, 767.02(1)(i), STATS. The question, therefore, is whether the legislature has placed limits on the court's exercise of subject matter jurisdiction over actions to modify a child support order issued in another state. We conclude that it has.

In 1994, the legislature repealed § 767.65, STATS., 1991–92, entitled the "Revised uniform reciprocal enforcement of support act" (RURESA) and adopted the provisions of the Uniform Interstate Family Support Act (UIFSA) as ch. 769, STATS., *see* 1993 Wis. Act 326, with the goal of establishing practical rules for the enforcement or modification of another state's child support orders. Section 769.611, STATS., entitled "Modification of child support order of another state," speaks directly to the competency of Wisconsin courts in interstate cases involving the modification of child support orders. Unless the specific conditions listed in § 769.611 are satisfied, the court may not modify the

child support order even though it has subject matter jurisdiction over the action.

The first condition that must be satisfied before the court can exercise subject matter jurisdiction is that the child support order must have been registered in Wisconsin. *See* § 769.611(1), STATS. Shelli concedes that she never registered the Virginia child support order in Wisconsin. Nonetheless, even if Shelli had registered the child support order, it would not alter our conclusion that the court did not have competency to proceed and modify the order.

Once a child support order is registered in Wisconsin, a court may modify the order only if one of two conditions is met. First, if an individual party or the child is subject to the jurisdiction of this state and all the parties have filed a written consent submitting to the court's jurisdiction, the court may modify the order. *See* § 769.611(1)(b), STATS.[1] No written consent has been filed in the case at bar; therefore, para. (1)(b) does not apply.

---

[1] Section 769.611(1)(b), STATS., has been amended. *See* 1997 Wis. Act 27, § 5131. The amended paragraph allows modification if the following has occurred:

That an individual party or the child is subject to the personal jurisdiction of the tribunal and that all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this state may modify the *child* support order and assume continuing, exclusive jurisdiction over the *child support* order. *However, if the issuing state is a foreign jurisdiction that has not enacted this chapter, the written consent of the individual party residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.* [Amended language is in italics.]

This new language had not been added to para. (1)(b) when this lawsuit was commenced. Moreover, it would not have applied under the facts of this case.

171

Alternatively, the court may modify the child support order if all of the conditions of § 769.611(1)(a), STATS., are met. These conditions are:

1. The child, the individual obligee and the obligor do not reside in the issuing state.
2. A petitioner who is a nonresident of this state seeks modification.
3. The respondent is subject to the personal jurisdiction of the tribunal of this state.

Applying these requirements to the case at bar, it is clear that the first and third conditions are satisfied. As we stated previously, Timothy is subject to the personal jurisdiction of this state. Also, neither of the parties nor the child continues to reside in Virginia, the issuing state. But Shelli, the petitioning party, concedes that she is a Wisconsin resident. She is not, as the statute requires, a "nonresident of this state." *See* § 769.611(1)(a)2, STATS. Because the second requirement is not met, the court cannot exercise its jurisdiction to modify the Virginia child support order.

Our conclusion that § 769.611, STATS., limits the court's exercise of subject matter jurisdiction because Shelli is a Wisconsin resident is supported by the drafters' comments to the UIFSA. The comment states that under the UIFSA a tribunal may modify an existing child support order of another state which has lost continuing, exclusive jurisdiction[2] only if the specific,

---

[2] An issuing state loses continuing, exclusive jurisdiction over a child support order if it is no longer the residence of the obligor, the obligee or the child for whose benefit support is ordered. *See* § 769.205, STATS. Because neither of the parties nor the child continues to reside in Virginia, that state no longer has continuing, exclusive jurisdiction over the child support order. However, the trial court was of the opinion that although Virginia had lost continuing, exclusive jurisdiction, Shelli could

limited conditions of § 769.611(1) have been met. *See* UNIF. INTERSTATE FAMILY SUPPORT ACT § 611, 9 U.L.A. pt. I, cmt. at 467 (Supp. 1998) [hereinafter UIFSA]. The intent of the act is to achieve "rough justice" between the parties by mandating that the petitioner, whether it be the obligor or the obligee, seek a modification in a state other than the petitioner's state of residence. This is done by first registering the order in the state where, most typically, the responding party resides—the state that has personal jurisdiction over the respondent. *See id.*; *see also* § 769.611(1)(a) (petitioner must be a non-resident of this state and state must have personal jurisdiction over respondent). Thus, if the petitioner is the "obligor" who wants support decreased or terminated, that person must go to the state where the "obligee" lives. If it is the obligee who seeks to increase support, then that person must seek relief in the state where the paying party lives. *See* UIFSA § 611, cmt. at 468.

The policy rationale of "rough justice" is to prevent the kind of forum shopping that took place under the earlier RURESA. *See id.* at 467–68. It puts an end to the practice of an obligee receiving a divorce in one state, moving to another state and gaining long-arm jurisdiction over the obligor to take advantage of that state's more favorable child support laws. It also ends the practice of an obligor moving to a state with archaic child support laws, waiting for an enforcement proceeding to be filed and then litigating the issue in a more favorable climate. Furthermore, it ends "jurisdic-

still petition a Virginia court to modify the order. This is incorrect. Once the issuing state loses continuing, exclusive jurisdiction, it no longer has the power to modify the child support order. *See id.*; *see also* UNIF. INTERSTATE FAMILY SUPPORT ACT § 205, 9 U.L.A. pt. I, cmt. at 350–51 (Supp. 1998).

tion by ambush" where parents, by virtue of exercising their visitation rights in the state, delivering or picking up a child for visitation or simply engaging in unrelated business in the state, were involuntarily subjected to protracted litigation in that forum. Parents can now exercise their visitation rights without yielding jurisdiction to modify a child support order. *See id.* Also, having the petitioner submit to the respondent's state of residence alleviates the former problem of multiple, and often conflicting, child support modification orders by ending disputes about which tribunal may modify the order once the issuing state loses continuing, exclusive jurisdiction. *See id.* It is a commonsense solution to what at one time was a pervasive problem.

Shelli claims that § 769.103, STATS., supports her argument that the court may modify the order despite the clear and unambiguous intent of ch. 769, STATS. Section 769.103 states that the remedies provided by ch. 769 are cumulative and "do not affect the availability of remedies under other law." Shelli interprets this to mean that her remedies are not limited to ch. 769, but also include those available under ch. 767, STATS. To support her position, Shelli refers us to the drafters' comment for § 103 of the UIFSA, which states that "[t]he existence of procedures for interstate establishment, enforcement or modification of support or a determination of parentage in [this act] does not preclude the application of the general law of the forum." UIFSA § 103, cmt. at 344.

We reject this argument. Section 769.611, STATS., is the only statute which our legislature has drafted that specifically speaks to the court's competency to modify the child support order of another state. Thus,

ch. 769, STATS., is cumulative to nothing. Further, if a person were divorced in another state and were able to avail himself or herself of ch. 767, STATS., upon arriving in this state, it would render the majority of ch. 769 meaningless. We must construe statutes so as to not render them meaningless. *See State v. Way,* 113 Wis. 2d 82, 87, 334 N.W.2d 918, 920 (Ct. App. 1983).

Moreover, Shelli's argument is unpersuasive because she has conspicuously omitted from her argument those portions of the drafters' comment to § 103 which undermine her position. According to the comment, the statement that the UIFSA does not affect the application of general state law means that it does not preclude a petitioner from filing an *original action* for child support directly in the state of residence of the respondent, thereby submitting to that forum's generally applicable child support laws. *See* UIFSA § 103, cmt. at 344. For example, if Timothy had filed an *original* child support action in Wisconsin, nothing in ch. 769, STATS.—labeled an interstate act—would preclude the application of Wisconsin law to that action. But as the comment makes clear: "Once a child support order has been issued, this option is *no longer available* to interstate parties." UIFSA § 103, cmt. at 344 (emphasis added). Thus, the drafters' comment for § 103 of the UIFSA reaffirms our conclusion that because Virginia has already issued a child support order, the Wisconsin court must apply the provisions of § 769.611, STATS., for modification of another state's child support order.

Also, Shelli appears to argue that because Virginia no longer has continuing, exclusive jurisdiction, she is under no obligation to register the existing child support order and is free to petition a Wisconsin court to enter a new child support order under ch. 767, STATS.

Stated otherwise, she contends that because Virginia lost continuing, exclusive jurisdiction, she can petition a Wisconsin court to assume continuing, exclusive jurisdiction and enter a new order.

We reject this line of argument. Section 769.207(1)(a), STATS., makes clear that if another state has issued a child support order, the order of that tribunal *must* be recognized irrespective of where it was issued and whether either party or the child continues to reside in the issuing state. *See also* UIFSA § 207, cmt. at 434. Shelli cannot ignore the existing order.

Shelli further argues that the "rough justice" embodied in the UIFSA is not a matter of common sense, but is in fact contrary to public policy because it deprives the child of access to Wisconsin's more favorable child support laws. Therefore, it works to the detriment of the child and is "unfair." Our first response is that Shelli's arguments are more properly addressed to the legislature. It was that body which chose the "rough justice" idea espoused by the uniform act in lieu of a process guaranteeing access to our state's child support guidelines. Second, although the result may not be the most favorable from the child's point of view, it cannot be characterized as "unfair"—the child is being treated the same as any other child of an obligee seeking to modify the child support order of another state.[3] Third, it can be force-

---

[3] Although not every state has adopted the UIFSA, the likelihood of universal adoption is virtually certain, thereby ensuring equality of treatment nationwide. In enacting welfare reform, officially known as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Congress mandated enactment of UIFSA in order for a state to remain eligible for the federal funding of child support enforcement. *See* 42 U.S.C.A. § 666(f) (West 1991 & Supp. 1998).

fully argued that the UIFSA is "fair" because although it prevents Shelli from litigating her rights in Wisconsin, it also protects her from having to litigate her rights in Timothy's state of residence if he seeks to modify the order or in some other state with a more lenient attitude toward obligors should Timothy want to move there. This is the "rough justice" contemplated by the legislature when it adopted the UIFSA.

Finally, Shelli's arguments can also be read as questioning the wisdom of the "rough justice" policy because it seemingly places the goals of efficiency and simplicity before the best interests of the child. Again, these criticisms of the legislature's policy decision are best directed to that branch and not this court.[4]

*By the Court.*—Order affirmed.

[4] Timothy challenges the trial court's determination that he was a resident of Delaware and not Virginia. Because our decision that § 769.611(1), STATS., precludes Shelli's claim renders his argument moot, we do not address it. *See City of Racine v. J-T Enters. of Am., Inc.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).