Daniel M. LINN, Respondent–
Below, Appellant,

v.

**DELAWARE CHILD SUPPORT EN-
FORCEMENT and Carol J. Toman,
Petitioners–Below, Appellees.**

No. 520, 1997.

Supreme Court of Delaware.

Submitted: May 4, 1999.
Decided: Aug. 2, 1999.

Robert C. McDonald and Barbara J. Gadbois (argued), Borin & McDonald, Wilmington, DE, for Appellant.

Ellen S. Meyer, Wilmington, DE, for Appellees.

John M. McCabe and John J. Sampson, National Conference of Commissioners on Uniform State Laws, Chicago, IL, for Amicus Curiae.

Before VEASEY, Chief Justice, WALSH, HOLLAND, HARTNETT, and BERGER, Justices (constituting the Court en Banc).

HARTNETT, Justice.

In this appeal, we consider the provisions of the Uniform Interstate Family Support Act that relate to the modification and enforcement of a child support order after both parties and the children have left the issuing state. Although we do not agree with all of the reasoning of the Delaware Family Court, we find that a Minnesota Court did not lose jurisdiction in 1995 to enforce its 1983 Child Support Order, despite that all the parties and the children had left Minnesota by that time, because no other court had assumed jurisdiction over the matter. The Family Court correctly held that the 1983 Minnesota Support Order as amended in 1995 was properly registered before it. We also find that the Family Court did not abuse its discretion in awarding attorney's fees against Appellant. We therefore AFFIRM.

## I. Summary of Facts

Daniel M. Linn and Carol J. Toman, were married in Iowa in 1968. In January 1983 they moved with their two children to Minnesota. On December 22, 1983, the Minnesota Court entered a Divorce Decree and Order giving Ms. Toman primary cus-

tody of the two children and ordering Mr. Linn to pay child support in the amount of 30% of his net income and one-half of medical and dental expenses of the children until both children reached the age of majority.

In 1984 the older child began living with his father. The parties at that time allegedly orally agreed that Mr. Linn would pay Ms. Toman only 15% of his net income as child support. No written agreement was submitted to the Minnesota Court, however. In June of 1987 the older child graduated from high school and this led to a dispute as to Mr. Linn's continuing support obligations. Mr. Linn believed his payments were to remain at the 15% level and he therefore continued to pay only 15% of his net income as support. Ms. Toman disagrees and claims that Mr. Linn's obligation was to pay 30% of his net income as support.

In March, 1995, Ms. Toman filed a petition in Minnesota for assessment of arrearages in payments from April 1987 through April 30, 1995, pursuant to the Minnesota original support decree dated December 22, 1983. By then neither Mr. Linn, Ms. Toman, nor any of the children, resided in Minnesota. Although Mr. Linn was personally served with notice of the 1995 hearing on the arrears, he failed to respond or appear at the hearing. After a hearing,[1] the Minnesota Court entered an order on April 21, 1995 requiring Mr. Linn to pay $30,458.00 in child support arrearages from June 1, 1987 through April 30, 1995 and $4,731.05 for his half share of medical and dental expenses for the period of January 1, 1988 through April 30, 1995. After notice from Ms. Toman's counsel that the order did not include a provision setting forth a specific dollar amount for the ongoing child support that was based on the percentage calculation, the Minne-

sota Court entered an Amended Arrearages Order on May 1, 1995 ordering Mr. Linn's employer to withhold $750 per month for current support.

Ms. Toman then registered the 1995 Minnesota Arrearages Order in California, where she was then residing with the younger child, and sought enforcement. Neither Mr. Linn nor the older child ever resided in California. The California Court entered an Interstate Wage Attachment against Mr. Linn, who then resided in Delaware, by mailing it to his Delaware employer and directing it to withhold from Mr. Linn's monthly wages $750 for current support and $175 for arrears. Mr. Linn's employer then began deducting $925.00 from his monthly wages.

In February 1996, Mr. Linn filed a petition in the Delaware Family Court contesting the validity and enforcement of the non-registered foreign support order in Delaware and petitioned the Court of Chancery for an injunction to prevent a wage attachment. Both the Court of Chancery and the Family Court dismissed Mr. Linn's petitions for lack of subject matter jurisdiction. Mr. Linn then filed an action against his employer in the Delaware Superior Court seeking to have the wage attachment stayed. The Superior Court granted Mr. Linn's Motion for summary judgment and stayed the wage attachment, finding that there was no registered support order in Delaware and Mr. Linn's employer terminated the wage withholding.

On January 3, 1997, the California Court, on behalf of Ms. Toman, registered the 1995 Arrearages Order of the Minnesota Court in the Delaware Family Court.[2] The original 1983 Minnesota Court Support Order, however, has apparently not been filed with the Delaware Family Court. Mr. Linn objected to this attempt

1. Ms. Toman did not personally appear at the hearing but was represented by her Minnesota counsel. No appearance was made by or on the behalf of Mr. Linn.

2. Attached to the California Order requiring support payments be paid directly to the Fam-

ily Support Trustee of Santa Clara County in San Francisco, California, were three copies of the May 1, 1995 Minnesota Arrearages Order, and three copies of the State of California's Revised Uniform Reciprocal Enforcement of Support Act of 1968.

to register the 1995 Minnesota Arrearages Order but the Delaware Family Court Master ruled it was properly filed and registered it on August 1, 1997.[3] The Family Court certified the arrears owed by Mr. Linn at $32,866.05 as of July 23, 1996 and ordered a monthly wage attachment for $750.00.[4] Mr. Linn requested a review *de novo* of the Master's order. The Delaware Family Court on October 15, 1997 rejected Mr. Linn's claims and upheld the registration of the 1995 Minnesota Arrearages Order for enforcement.[5] The court denied Ms. Toman's request for interest on the arrearages judgment, found that by contesting the registration Mr. Linn had engaged in unnecessary litigation, and granted Ms. Toman's request for award of attorney fees.[6] Mr. Linn appeals these holdings. After oral argument in this Court, the National Conference of Commissioners on Uniform State Laws, at the invitation of the Court, submitted an amicus curiae informational brief.

## II. The Delaware Family Court Ruling

In its October 15, 1997 decision, the Delaware Family Court, *inter alia*, ruled that the 1995 Minnesota Arrearages Order was properly before it for enforcement.[7] Mr. Linn contends that the Uniform Reciprocal Enforcement of Support Act (1950) (as amended in 1952 and 1958) (URESA)[8] controls this action because the Uniform Interstate Family Support Act

(1992) (UIFSA) had not been enacted in Delaware on May 1, 1995 when the Minnesota Arrearages Order was issued. The Family Court found that on March 1, 1995, when the Minnesota Court entered its Arrearages Order, Minnesota had adopted section 205(a) of the Uniform Interstate Family Support Act (1992) (UIFSA) and that Delaware enacted it effective July 1, 1995.[9] The Family Court, therefore, found that in January 1997 when the 1995 Minnesota Arrearages Order was forwarded to the Delaware Family Court on behalf of Ms. Toman, section 205(a) of the UIFSA (1992)[10] was in effect in Delaware and therefore it correctly applied UIFSA (1992) to this proceeding.[11]

It is undisputed that when the Minnesota Court entered its 1995 Arrearages Order, Minnesota was not the residence of the obligor (Mr. Linn), the individual obligee (Ms. Toman), nor the children for whose benefit the support order was issued. And none of the individual parties had filed a written consent with Minnesota for a tribunal of another state to assume continuing, exclusive jurisdiction so as to be able to modify the order. Nor had any other state assumed continuing jurisdiction over the child support order. The Family Court found that the Minnesota Court had continuing subject matter jurisdiction when it entered its 1995 Arrearages Order despite that Mr. Linn, Ms. Toman, and the children no longer resided in Minnesota.[12] The Delaware Family Court relied on sec-

---

3. *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Aug. 1, 1997).

4. *Id.*

5. *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997).

6. *Id.* at 9–10.

7. *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997). This decision was an appeal *de novo* from the Master's order.

8. Delaware adopted the Amended Uniform Reciprocal Enforcement of Support Act effective July 1, 1955. 50 *Del. Laws* ch. 219, § 1 (1955). Some of the 1958 amendments to URESA were adopted in Delaware on July 27,

1976. 60 *Del. Laws* ch. 643, §§ 1–5 (1975). Section 640 was added to 13 *Del. C.* ch. 6 on July 21, 1989. 67 *Del. Laws* ch. 150, § 1 (1989). For simplicity we will refer to the Uniform Reciprocal Enforcement of Support Act (1950) and the 1952 and 1958 amendments as URESA without reference to the enactment or amendment dates.

9. *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997), at 3–4.

10. 13 *Del. C.* § 614.

11. *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997), at 3–4.

12. *Id.* at 4–6.

tion 205(a) of UIFSA (1992) (quoted hereafter) and held that under it the Minnesota Court retained continuing, exclusive jurisdiction to modify its original 1983 Child Support Order, despite the departure of all the parties from Minnesota because Mr. Linn and Ms. Toman had not filed a written consent for a tribunal in another state to assume jurisdiction as provided in section 205(a)(2) of UIFSA (1992).[13] The Family Court also found that the Minnesota Court had personal jurisdiction over Mr. Linn when it entered the 1995 Arrearages Order. That holding was not contested in this appeal.[14]

The Delaware Family Court also held that it could not consider what payments were made under the 1983 Minnesota Support Order before the 1995 Minnesota Arrearages Order was entered, but it could consider what payments were made after the 1995 Minnesota Arrearages Order was entered in Delaware.[15] The Family Court also held it could not consider the alleged oral agreement between Mr. Linn and Ms. Toman to reduce the support payments that were required under the 1983 Minnesota Support Order and it could not consider the issue of whether any interest is due under the two Minnesota Orders.[16] Finding the Delaware litigation was unnecessary, the Family Court awarded Ms. Toman counsel fees.[17]

### III. Standard and Scope of Review

■ The standard and scope of review as to whether a court has subject matter jurisdiction requires this Court to review a question of law, that is reviewable *de novo.*[18]

### IV. The Continuing, Exclusive Jurisdiction of the Minnesota Court

■ The term "continuing, exclusive jurisdiction" is used in the Uniform Interstate Family Support Act (1992) (UIFSA) to indicate that only one tribunal has jurisdiction to modify a child support order at a time and that tribunals in jurisdictions that have enacted UIFSA (1992) have subject matter jurisdiction to enforce the one-order, provided they have personal jurisdiction over the respondent.[19] In this case only one state issued a child support order: Minnesota.[20] Mr. Linn incorrectly asserts that the Delaware Family Court should not recognize the 1995 Minnesota Arrearages Order because Minnesota lost continuing, exclusive jurisdiction to modify that order when all the parties and the children moved from the state.

Delaware enacted the UIFSA (1992) effective July 1, 1995.[21] The controlling section of the Act provides:

*Continuing, exclusive jurisdiction.*

(a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child support order:

(1) As long as this State remains the residence of the obligor, the indi-

13. *Id.* at 5–6.

14. *Id.* at 6–7.

15. *Id.* at 7–8.

16. *Id.* at 8–9.

17. *Id.* at 9–10.

18. *Butler v. Grant,* Del.Supr., 714 A.2d 747, 750 (1998); *Yost v. Johnson,* Del.Supr., 591 A.2d 178, 181 (1991).

19. UIFSA Prefatory Note, II(B)(3) (1992), §§ 204–208 (1992). *See e.g., Gentzel v.*

*Williams,* 25 Kan.App.2d 552, 965 P.2d 855 (1998); *State ex rel. Havlin v. Jamison,* Mo.Ct. App., 971 S.W.2d 938 (1998); *In re Henderson,* Tex.App., 982 S.W.2d 566 (1998, no writ); *Cepukenas v. Cepukenas,* 221 Wis.2d 166, 584 N.W.2d 227 (1998), *review denied,* 221 Wis.2d 655, 588 N.W.2d 632 (1998).

20. Although the parties indicate that Ms. Toman filed an action in Virginia, it is undisputed that no order was ever issued.

21. The adoption of UIFSA (1992), effective July 1, 1995, superseded Delaware's Uniform Reciprocal Enforcement of Support Act. 13 *Del. C.* Ch. 6. In this opinion we will refer to the UIFSA (1992) for simplicity.

vidual obligee or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

(b) A tribunal of this State issuing a support order consistent with the law of this State may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to a law substantially similar to this chapter.

(c) If a child support order of this State is modified by a tribunal of another state pursuant to this chapter or a law substantially similar to this chapter, a tribunal of this State loses its continuing, exclusive jurisdiction with regard to prospective enforcement of the order issued in this State, and may only:

(1) Enforce the order that was modified as to amounts accruing before the modification;

(2) Enforce nonmodifiable aspects of that order; and

(3) Provide other appropriate relief for violations of that order which occurred before the effective date of the modification.

(d) A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to this chapter or a law substantially similar to this chapter.[22]

The Amicus suggests that when sections 205, 206, 611, and 612[23] of the Uniform Interstate Family Support Act (1992) are read together the sections mean:

a tribunal that enters a child support order has continuing, exclusive jurisdiction over the support order if that state remains the residence of the obligor, the individual obligee or the child; or a tribunal that has continuing, exclusive jurisdiction over a child support order will be divested of that continuing, exclusive jurisdiction if:

A) the obligor, the individual obligee, and the child leave the issuing state and another state assumes continuing, exclusive jurisdiction over the child support order in accordance with the terms of §§ 609–614; or

B) all the individual parties file written consents with the issuing tribunal for a tribunal of another state to assume continuing, exclusive jurisdiction over the subject matter so that it may modify the order.[24]

We agree. Although the Delaware Family Court correctly held that the Minnesota Court had jurisdiction to enter its 1995 Arrearages Order, it incorrectly relied on Section 205(a)(2) of UIFSA without considering Sections 611 and 612. We agree with the Amicus that section 205(a)(2) of UIFSA (1992) applies only if at least one of the parties or the child remains in the state and therefore the issuing state still has continuing, exclusive jurisdiction, but the parties consent to have another tribunal assume continuing, exclusive jurisdiction, thereby divesting continuing, exclusive jurisdiction from the issuing state. The facts here are different.

---

**22.** 13 *Del. C.* § 614. Because UIFSA section 205 (1992) is worded slightly different than the version adopted in Delaware, the Delaware version is quoted. UIFSA section 205(a)(2) (1992) begins: "Until each individual party has filed written consent." The rest of section 205 is substantially the same as 13 *Del. C.* § 614.

**23.** 13 *Del. C.* § 614 is the same as UIFSA section 205 (1992); 13 *Del. C.* § 615 is the same as UIFSA section 206 (1992); 13 *Del. C.* § 670 is the same as UIFSA section 611 (1992); and 13 *Del. C.* § 671 is the same as UIFSA section 612 (1992).

**24.** We note that unfortunately the Uniform Act does not contain cross references between sections 205 and 206 and sections 611 and 612.

The purpose of the Uniform Interstate Family Support Act (1992) is to eliminate multiple child support orders that were permitted under its predecessors, the Uniform Reciprocal Enforcement of Support Act (URESA) and the Revised Uniform Reciprocal Enforcement of Support Act (1968) (RURESA).[25] The goal of UIFSA (1992) is to provide a system where only one child support order is in effect at any one time.[26]

Under URESA and RURESA (1968) an obligor would often attempt to gain a home field advantage by refusing to pay a support order and then wait until the obligee attempted to enforce the order in the obligor's domiciliary jurisdiction.[27] The obligor would then seek a modification in the jurisdiction the obligee did not choose.[28] Under URESA, the obligor often succeeded in obtaining a more favorable support order in the obligor's domiciliary jurisdiction.[29] The intent of UIFSA (1992) was to stop this practice and to level the playing field.[30] Under UIFSA (1992), if either the obligor or obligee wants to modify the order and the issuing state no longer has continuing, exclusive jurisdiction, the party seeking the modification must bring the action in the state with personal jurisdiction over the respondent, usually the respondent's domiciliary state.[31]

Sections 609–614 of UIFSA (1992) provide the process for registration of a child support order for modification. After notice and a hearing, the responding tribunal must find the following requirements of Section 611(a)(1) of UIFSA (1992) exist in order for it to obtain jurisdiction to modify a child support order entered in another state: 1) that the child, the individual obligee, and the obligor no longer reside in the

25. See UIFSA Prefatory Note, II(B)(3)(C)–(D), §§ 205 cmt., 601 cmt., 603 cmt., 606 cmt., 611 cmt. (1992).

26. UIFSA Prefatory Note, II(B)(3) One–Order System (1992) ("Under the present URESA the majority of support proceedings are de novo. Even when an existing order of one state is "registered" in a second state, the registering state often asserts the right to modify the registered order. This means that more than one valid support order can be in effect in more than one state. Under UIFSA, the principle of continuing, exclusive jurisdiction is introduced into the Act for the first time; this aims so far as possible, to allow only one support order to be effective at any one time. This principle is carried out in Sections 204 (rules for resolving actions pending in two or more states); 205 and 206 (rules for determining which tribunal has continuing, exclusive jurisdiction over an order); 207 (reconciliation with orders issued before the effective date of the Act); and 208 (multiple orders for two or more families supported by the same obligor.")).

27. UIFSA § 611 cmt. (1992); *Gentzel v. Williams*, 965 P.2d at 858–59; *Cepukenas v. Cepukenas*, 584 N.W.2d at 230–31.

28. UIFSA § 611 cmt. (1992).

29. *See Gentzel v. Williams*, 965 P.2d at 858–59; *Cepukenas v.. Cepukenas*, 584 N.W.2d at 230–31.

30. UIFSA § 611 cmt. (1992). ("Note that Subsection (a)(1) requires that the petitioner be a nonresident of the forum in which modification is sought and the respondent to be subject to the jurisdiction of that forum. This contemplates that the issuing state has lost continuing, exclusive jurisdiction and that the obligee may seek modification in the obligor's state of residence. This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local court to the marked disadvantage of the other party. For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order.... The obligee is required to make that motion in a state other than that of his or her residence which has personal jurisdiction over the obligor. Most typically this will be the state of residence of the obligor. Similarly, fairness requires that an obligee seeking to modify or modify and enforce the existing order in the state of residence of the obligor will not be subject to a cross-motion to modify custody or visitation merely because the issuing state has lost its continuing, exclusive jurisdiction over the support order. The obligor is required to make that motion in a state other than that of his or her residence; most likely the obligee's state of residence.")).

31. UIFSA § 611 (1992).

issuing state; 2) that the petitioner seeking modification is not a resident of the responding tribunal's state; and 3) that the responding tribunal has personal jurisdiction over the respondent.[32]

Section 611(a)(2) provides an alternative basis for the responding tribunal to obtain jurisdiction to modify the order of another state if it finds that: "an individual party or the child is subject to the personal jurisdiction of the tribunal and all of the individual parties have filed a written consent in the issuing tribunal providing that a tribunal of this State may modify the support order and assume continuing, exclusive jurisdiction over the order."[33] Under UIFSA (1992), Mr. Linn could have sought modification of his then current support obligations under the 1983 Minnesota Child Support Order in Ms. Toman's then home state, but he could not have sought modification in his home state, Delaware.

## V. Continuing Jurisdiction to Enforce a Child Support Order

The comment to Section 205 of UIFSA (1992) indicates that under that Act when all the parties and all the children leave the issuing state, the issuing tribunal loses continuing, exclusive jurisdiction to modify its existing order, but does not lose jurisdiction to enforce the order. The comment states:

[t]his section is perhaps the most crucial provision in UIFSA. It establishes the principle that the issuing tribunal retains continuing, exclusive jurisdiction over the support order except in very narrowly defined circumstances. If all parties and the child reside elsewhere, the issuing state loses its continuing, exclusive jurisdiction—which in practical terms means the issuing tribunal loses its authority to modify its order. The issuing state no longer has a nexus with the parties or child and, furthermore, the issuing tribunal has no current information about the circumstances of anyone involved. *Note, however, that the one-order of the issuing tribunal remains valid and enforceable.* That order is in effect not only in the issuing state and those states in which the order has been registered, but also may be enforced in additional states in which the one-order is registered for enforcement after the issuing state loses its power to modify the original order, see Sections 601–604 ... The one-order remains in effect until it is properly modified in accordance with the narrow terms of the Act, see Sections 609–612.[34]

This comment to Section 206 of UIFSA (1992) reinforces the premise that for the issuing state to retain the power to modify its order, the child or at least one party must continue to reside in the issuing state.[35] It states "[s]ubsection (b) confirms the power to modify a child support order of the issuing state, provided it retains a sufficient nexus with its order [;] UIFSA defines that nexus as any situation in which the child or at least one of the parties continues to reside in the issuing state."[36]

The Uniform Interstate Family Support Act (1992) was amended in 1996. Although these amendments have no bearing on this action, they are supportive of our interpretation.[37] The 1996 revised comment to Section 611 of UIFSA (1996) states:

**32.** UIFSA § 611 (1992). The comment to UIFSA section 609 (1992) makes it clear that a responding state can not modify another's states order until the issuing state loses continuing, exclusive jurisdiction.

**33.** UIFSA § 611(a)(2) (1992).

**34.** UIFSA § 205 cmt. (1992) (emphasis added).

**35.** UIFSA § 206 cmt. (1992).

**36.** UIFSA § 206 cmt. (1992).

**37.** UIFSA (1996) amended sections 101(7), (16), (19); 102; 203; 205(a)(2); 207; 301; 303; 304(b); 306; 307; 501; 502; 503; 504; 505; 506; 605; 606; 609; 611; 613; and 614.

[u]nder UIFSA, registration is subdivided into distinct categories; registration for enforcement, or modification, or both. UIFSA is based on recognizing the truism that when a foreign support order is registered for enforcement, the rights of the parties affected have been previously litigated. Because the obligor already has had a day before an appropriate tribunal, an enforcement remedy may be summarily invoked. On the other hand, modification of an existing order presupposes a change in the rights of the parties. In fact, even under RURESA more elaborate procedures were required by most states prior to the issuance of a modified order. The requirements for modification of a child support order are much more explicit and restrictive under UIFSA.

... UIFSA establishes a set of "bright line" rules which must be met before a tribunal may modify an existing child support order. The intent is to eliminate multiple support orders to the maximum extent possible consistent with the principle of continuing, exclusive jurisdiction that pervades the Act.

. . . .

The procedure put in place by UIFSA is in marked contrast to the actual system under RURESA. The multiple-order system provided virtually no incentive for an obligor to seek to reduce an unfair or unduly burdensome child support order. Rather, the obligor typically waited for an enforcement proceeding to be filed in his state of residence and then sought modification in a forum which presented him with the "hometown advantage." Two major arguments sustain the choice of venue made by the Act. First, "jurisdiction by ambush" will be avoided. That is, personal service on either the custodial or non-custodial party found within the state borders will not yield jurisdiction to modify. Thus, parents seeking to exercise rights of visitation, delivering or picking-up the child for such visitation, or engaging in unrelated business activity in the state, will not be involuntarily subjected to protracted litigation in an inconvenient forum. The chilling effect on the exercise of parental contact with the child that the possibility of such litigation might have is avoided. Second, disputes about whether the tribunal has jurisdiction will be eliminated; submission by the petitioner to the state of residence of the respondent alleviates this issue completely.[38]

As will be discussed, it is unnecessary for us to determine if Minnesota had continuing, exclusive jurisdiction to modify its original 1983 Support Order in 1995 because we find that the 1995 Minnesota Arrearages Order was an enforcement action authorized under UIFSA (1992) and not a modification of the original order.

Amicus asserts, in the alternative, that even if an issuing tribunal loses continuing, exclusive jurisdiction when all the parties and child(ren) leave its jurisdiction, the issuing state still has "continuing jurisdiction to enforce" accrued amounts and non-modifiable assets of its order as compared to "continuing, exclusive jurisdiction to modify."

UIFSA (1992) provides that the issuing state does not lose its power to enforce the existing order until another state properly exercises its jurisdiction and modifies the issuing state's order.[39] Section 207 states: "[i]f only one tribunal has issued a child support order, the order of that tribunal must be recognized." [40] Although not dispositive, the revised comment to Section 207 UIFSA (1996) confirms this interpretation: "[s]ubsection (a) declares that if only one child support order exists, it is to be denominated the controlling order, irrespective of when and where it was issued and whether any of the individual parties or the child continue to reside in the issuing state." [41] We agree with the Amicus

---

38. UIFSA § 611 cmt. (1996).

39. UIFSA § 205(b)–(c) (1992).

40. UIFSA § 207(a)(1) (1992).

41. UIFSA § 207 cmt. (1996).

that, if sections 205 and 207 are read together, they provide that when only one order has been issued that order controls, and the issuing tribunal is authorized to enforce its order if no other state has assumed continuing, exclusive jurisdiction.

## VI. The 1995 Minnesota Arrearages Order

In 1995, Ms. Toman filed a petition for arrears, current support, and medical and dental expenses in Minnesota. On April 20, 1995 and May 1, 1995, the Minnesota Court issued an order holding that Mr. Linn owed $30,458.00 in arrears, $4,731.05 in medical and dental expenses, and $750.00 per month in current support.[42] Mr. Linn contends that the 1995 Minnesota Arrearages Order was a modification of the 1983 order and that the Minnesota Court no longer had jurisdiction to "modify" its 1983 order because all of the parties had left Minnesota.

■■■ Under UIFSA (1992), whether or not Minnesota retained continuing, exclusive jurisdiction to modify its 1983 Support Order, it clearly retained jurisdiction to enforce its original 1983 Support Order.[43] Section 205(b) of UIFSA (1992) provides the steps necessary to divest the issuing tribunal of continuing, exclusive jurisdiction. Section 205(c) of UIFSA (1992) explicitly provides that the original issuing state retains the power to enforce the collection of amounts accruing before a modification, to enforce nonmodifiable aspects of the order, and to provide for other appropriate relief for premodification violations of that order.[44] The official com-

ment to section 205 states: "nothing in this section is intended to deprive a court which has lost continuing, exclusive jurisdiction of the power to enforce arrearages which have accrued during the existence of a valid order."[45] Clearly if an issuing tribunal does not lose jurisdiction to enforce its existing order when it has been modified in another state, the issuing tribunal retains jurisdiction to enforce its order if no modification has taken place and no other jurisdiction has assumed continuing, exclusive jurisdiction.

■ Modification is not defined in UIFSA (1992); therefore the ordinary meaning of the word applies. In Black's Law Dictionary modify is defined: "[t]o alter; to change in incidental or subordinate features; enlarge, extend; amend; limit, reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease."[46] Modification is also defined as "[a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact."[47]

Ms. Toman's 1995 petition in Minnesota requested arrears for unpaid support accruing as of April 1987 under the 1983 order that required payment by Mr. Linn of 30% of his salary and for 50% of accrued medical bills. In 1995, Ms. Toman was only seeking to enforce the 1983 order, not to modify it. Additionally, Ms. Toman sought a monetary calculation of the 1983 order to facilitate enforcement via a wage

**42.** *Linn v. Linn*, Minn. 4th Jud. Dist., C.F. No. DC 108135 (May 1, 1995), Amended Order at 2.

**43.** *Gentzel v. Williams*, 25 Kan.App.2d 552, 965 P.2d 855 (1998) (holding that when the Texas Child Support Enforcement Agency filed a notice of intent to apply for a wage attachment pursuant to a Arizona Divorce and Child Support Order, the Kansas tribunal improperly heard and granted obligor's request for downward modification because under UIFSA and 28 U.S.C. § 1738B-the Full Faith and Credit for Child Support Orders Act (FFCCSOA), the Arizona order was entitled to

enforcement without modification even though none of the parties continued to reside in Arizona because Kansas lacked subject matter jurisdiction to modify the Arizona support order).

**44.** UIFSA § 205(c) (1992) quoted previously.

**45.** UIFSA § 205 cmt. (1992).

**46.** Black's Law Dictionary 1004 (6th ed.1990).

**47.** Black's Law Dictionary 1004 (6th ed.1990).

attachment. She requested that the Minnesota Court compute the sums due under the 1983 Order, whereby 30% of Mr. Linn's salary was to be paid, to arrive at an enforceable dollar figure. Ms. Toman did not seek to increase, decrease or change the amount of the 1983 order; therefore, the 1995 order was not a modification of the earlier order and Minnesota retained jurisdiction to enforce its 1983 order.

We find that Mr. Linn's contention that a modification has been defined in Minnesota to include a percentage calculation is without merit. Mr. Linn asserts that the Minnesota Court in *Allan v. Allan* defined modification of a child support order to include substituting a fixed amount per month or a percentage of income.[48] *Allan*, however, is distinguishable.[49] When reading the entire opinion, it is clear that the Minnesota Court's use of the term "modification" was in reference to an increase or decrease in the amount of child support based on changing conditions or the discarding of the existing formula used to

calculate the child support, not a simple calculation based on the existing formula and current salary.[50] The Court made this clear when it stated that "a child support order may be modified upon a showing of [the statutory defined factors, such as] substantially increased or decreased earnings or needs of a party or the children that makes the terms of the existing order unreasonable and unfair."[51] The support modification in *Allan* was from an existing formula based on a percentage of the father's income to a lower fixed amount that was capped; it was not a mere calculation computation to determine an enforceable amount.[52] Mr. Linn's argument is therefore unpersuasive. It is clear from the Minnesota Court's 1995 Order that the $750.00 per month is based on 30% of Mr. Linn's salary and is not a modification of the 1983 Child Support Order.

Mr. Linn's reliance on Ms. Toman's use of the word "modify" in her 1995 petition filed in Minnesota to support his argument that this is a modification is also unpersuasive.[53] Within the same documents, Ms.

48. *Allan v. Allan*, Minn. Ct.App., 509 N.W.2d 593 (1993). It would appear that Mr. Linn bases his assertion on the Appellate Court's holding "that a child support obligation may be changed from a percentage formula to a specific dollar amount only upon a showing of substantial change in circumstances that makes the terms of the existing order unreasonable and unfair." *Id.* at 596.. Only if the last sentence is read out of context could it support Mr. Linn's position.

49. The order in *Allan* provided a fixed amount of child support while the mother was receiving maintenance, after the period of maintenance had ended, the father was required to pay "30% of [his] net income per year not to go below [$1,500] per month." *Id.* at 595. When the mother remarried in 1992 her maintenance payments ended. In 1993, she moved for an order declaring that the dissolution decree required the father to pay $3,016.60 per month (30% of his net income), and requested arrearages and attorney fees. In the father's response he moved for a modification of child support. After finding that the father's gross annual income was approximately $37,000 and that under existing 30% formula he would pay $3,016.50 in child support, the district court reviewed

the mother's monthly expenses, determined the mother's monthly needs, and ordered that child support be set and capped at $2,500 per month subject only to cost-of-living increases. *Id.* at 596.

50. The Minnesota Court of Appeals found "[b]ecause the dissolution decree set child support at 30% of [father's] net income, the district court's decision to set and cap child support at $2,500 per month was a modification of child support" and that the lower court "modified the formula used to calculate child support rather than modifying only the amount of child support to be paid according to a formula." *Id.* at 596.

51. *Id.*

52. *Id.* at 595–96.

53. The pertinent paragraph in Ms. Toman's 1995 motion filed in Minnesota states:

I am asking that this Court modify the current order only in so far as setting a specific dollar amount for ongoing support so that the support provision can be enforced. I am not requesting a modification of the substance of the support provision. Continuing support based upon a percent-

Toman requested that the court issue an order "[s]etting a fixed amount for ongoing child support to be paid by wage withholding." [54] Ms. Toman explained that she had unsuccessfully and repeatedly tried to obtain information regarding Mr. Linn's income including serving him with Interrogatories and Request for Production of documents regarding his financial situation and that she was having trouble enforcing its 1983 support order without a calculation of the dollar amount owed. In its 1995 Arrearages Order the Minnesota Court based its calculation on the only evidence Ms. Toman had of Mr. Linn's income, his March 6, 1986 notarized statement that he was required to provide 30% of his net income for child support that at that time was approximately $9,000 per year. [55]

Because we find that the 1995 Minnesota Arrearage Order was not a legal modification of its 1983 Support Order, it is unnecessary for us to decide if Minnesota had continuing jurisdiction to modify that order.

## VII. Registration of the Minnesota 1995 Arrearages Order in Delaware

■ Mr. Linn contends that the Minnesota 1995 Arrearages Order is not properly before the Delaware Family Court because the California Court did not have subject matter nor personal jurisdic-

tion over him so as to have had the authority to cause the order to be registered in Delaware for enforcement under RURESA (1968). On behalf of Ms. Toman, the Superior Court of California, in December 1996, sent a request to register a foreign support order to the Delaware Family Court. [56]

Mr. Linn contends that because California had not enacted the Uniform Interstate Family Support Act (1992) when it forwarded the registration request to Delaware and continued to enforce child support under the prior Revised Uniform Reciprocal Enforcement of Support Act of 1968, California lacked jurisdiction to request registration and enforcement of the Minnesota 1995 Arrearages Order in Delaware. This claim is without merit.

UIFSA (1992) was in effect in Delaware when the Minnesota 1995 Arrearages Order forwarded from California was received in Delaware in January 1997. Section 207 of UIFSA (1992) governs the reconciliation of the responding state's proceedings with orders of other states. It provides the rules that apply if a proceeding is brought for enforcement and one or more child support orders have been issued and states "[i]f only one tribunal has issued a child support order, the order of that tribunal must be recognized." [57] .The comment states that the "Reconciliation with Orders of Other

age figure without independent verification is unreasonable and unfair and certainly was not the intent of this Court in 1983. Additionally, I cannot utilize any of the support collection agency services because they do not know what it is that they are supposed to collect.
Affidavit of Petitioner, Carol J. Toman, filed in Minnesota, County of Hennepin, District Court, 10th Judicial District, Family Court Division dated March 23, 1995.

**54.** *Id.* at 3.

**55.** *Linn v. Linn*, Minn. 4th Jud. Dist., C.F. No. DC 108135 (May 1, 1995), Amended Order at 2. In its 1995 Arrearages Order the Minnesota Court indicated that "[t]he Respondent is on notice that if the Respondent's income is substantially reduced, it is his/her responsibility

to serve and file a motion to reduce or suspend the child support." *Id.* at 3.

**56.** The required paperwork was attached to the registration request. In the Case Summary section of the registration request, the amount of arrears, listed as $32,866.05, was calculated from May 1995 to May 1996 and the brief summary of the request stated: "[Please] register Minnesota Order & Collect Arrears. We registered Order in [California] and sent wage [assignment] to [Mr. Linn's] Employer. [Mr. Linn] sued his employer to stop our wage [assignment]. Employer wants order registered in Delaware so they can deduct." Child Support Enforcement Transmittal, County of Santa Clara, State of California (Nov. 26, 1996), at 1.

**57.** UIFSA § 207(a) (1992).

States" section addresses the problem of switching from URESA and RURESA (1968) to UIFSA (1992) and is "designed to span the gulf between the one-order system and the multiple order system in place under RURESA."[58] Under section 207 of UIFSA (1992) if only one order has been issued, it will be treated as if it had been issued under UIFSA if it was issued under a statute consistent with the principles of UIFSA.[59]

██ Section 301 of UIFSA (1992) lists the proceedings authorized under the Act and includes "enforcement of a support order and income-withholding order of another state without registration pursuant to Article 5"[60] and "registration of an order for ... child support of another state for enforcement pursuant to Article 6."[61] Under UIFSA, "the role of the initiating tribunal consists merely of the ministerial function of forwarding the documents."[62] As a responding tribunal, the Delaware Family Court is required to apply Delaware procedural and substantive law to the enforcement action unless otherwise provided by the Act.[63] Section 305 of UIFSA (1992) authorizes the responding tribunal to enforce a support order and states:

(a) When a responding tribunal of this State receives a [petition] or comparable pleading from an initiating tribunal or directly pursuant to Section 301(c) (Proceedings Under this [Act]), it shall cause the [petition] or pleading to be filed and notify the [petitioner] by first class mail where and when it was filed.[64]

Section 101(7) of UIFSA (1992) defines initiating state as "a state in which a proceeding under this [Act] or a law substantially similar to this [Act], the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act is filed for forwarding to a responding state."[65] Responding state is defined as "a state to which a proceeding is forwarded under this [Act] or a law substantially similar to this [Act], the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act."[66] The Delaware Family Court, therefore, properly applied UIFSA (1992) to the proceedings before it because Delaware had adopted UIFSA (1992) before the registration was received and the support order forwarded for registration from California under the RURESA was recognized and enforced by the responding state under UIFSA.[67]

58. UIFSA § 207 cmt. (1992).

59. UIFSA § 207 cmt. (1992).

60. UIFSA § 301(b)(2) (1992).

61. UIFSA § 301(b)(3) (1992).

62. UIFSA § 304 cmt. (1992).

63. UIFSA § 303 (1992).

64. UIFSA § 305(a) (1992).

65. UIFSA § 101(7) (1992). The correlating provision of section 101(7) in the Delaware Code was amended effective July 25, 1997 to define initiating state as: "a state from which a proceeding is forwarded in which a proceeding is filed for forwarding to a responding state under this chapter or a law or procedure substantially similar to this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act." 13 *Del. C.* § 601(7) (Supp.1998).

66. UIFSA § 101(16) (1992). This section was revised in Delaware, effective July 25, 1997, to define responding state as: "a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this chapter or a law or procedure substantially similar to this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act." 13 *Del. C.* 601(16) (Supp.1998).

67. UIFSA Prefatory Note, II(A)(3) Reciprocity Not Required (1992) states: "Reciprocity of laws between states is no longer required because at present all states have quite similar laws, and the enacting state should enforce a support obligation irrespective of another state's law. Nonetheless, consistent with past practice URESA, RURESA and all substantially similar state laws are deemed equivalent to UIFSA for purposes of interstate actions (Section 101(7), (16)). This means that any of these acts can be used if different states have different version in effect, which should help ease the transition to the new Act."

### VIII. Defenses available to Mr. Linn under 13 *Del. C.* 666(a)

Mr. Linn contends that the Delaware Family Court erred by rejecting the three defenses that he raised under 13 *Del. C.* § 666(a):[68] 1) that Ms. Toman was equitably estopped from enforcing the Minnesota order because of the alleged oral modification by the parties in 1984; 2) that Ms. Toman was equitably estopped from seeking payment of medical bills and insurance premiums because she never presented the bills to Mr. Linn for payment until she filed her 1995 action in Minnesota; and 3) that Mr. Linn should be able to reduce the amount of the Minnesota 1995 Arrearages Order by showing the Delaware Family Court all the payments he previously made.

Although Mr. Linn received notice of the 1995 motion in Minnesota, he took no action to request a modification or challenge the arrears. Mr. Linn can not now attempt to modify, in Delaware, the Minnesota 1995 Arrearages Order that has been filed for enforcement in Delaware. Mr. Linn's assertion that because UIFSA (1992) was not adopted in Delaware until July 1, 1995, this action should be governed by URESA is without merit. As discussed above, the enforcement action was not filed in Delaware until after UIFSA (1992) had been adopted; therefore URESA does not apply. UIFSA (1992) attempted to address the problems that occurred under URESA and RURESA (1968) whereby an obligor would wait for an enforcement action to be commenced and then request a modification in the obligor's then home state to a lesser sum.[69]

Section 604 of UIFSA (1992) states that "[t]he law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order."[70] The Family Court, therefore, did not err in not granting Mr. Linn's request for equitable relief under the circumstances. It would be inequitable to allow Mr. Linn to assert defenses that probably would not have been available to him in Minnesota[71] when he did not provide any information as to his net income.[72]

To allow Mr. Linn to challenge the Minnesota 1995 Arrearages Order would violate 28 U.S.C. 1738B[73] and the full faith and credit provisions of the United States Constitution. Under 28 U.S.C. § 1738B(g) even if a state loses continuing,

---

**68.** The essential part of 13 *Del. C.* § 666(a) states:
> (a) A Party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving 1 or more of the following defenses: ...
> (5) There is a defense under the law of this State to the remedy sought;
> (6) Full or partial payment has been made.

**69.** UIFSA § 611 cmt. (1992).

**70.** UIFSA § 604 (1992); 13 *Del. C.* § 663.

**71.** *See Ryan v. Ryan*, 300 Minn. 244, 219 N.W.2d 912, 916 n. 2 (1974) (stating "equitable defenses are not available in an action based on accrued payments due under [a] decree of divorce."); *Murphy v. Myers*, Minn. Ct.App., 560 N.W.2d 752, 755–56 (1997); *Faribault–Martin–Watonwan Human Servs. ex rel. Jacobson v. Jacobson*, Minn. Ct.App., 363 N.W.2d 342, 346 (1985) (finding that equitable estoppel is not available as a defense to the collection of child support arrears because of the need to protect the child's right to support); *But cf. McNattin v. McNattin*, Minn. Ct.App., 450 N.W.2d 169, 172 (1990) (noting that although the court was not bound by a parent's agreement regarding child support, based on the unusual circumstances of the case the lower court correctly applied equitable estoppel where the mother induced the father to change custody of their child by representing that she would forego child support).

**72.** Ms. Toman advised the Minnesota Court in 1995 that she believed that Mr. Linn's net income was considerably higher than the amount stated in his 1986 affidavit used to calculate the order. By not responding to the discovery request of Ms. Toman, Mr. Linn avoided providing proof of his actual income.

**73.** This statute is also known as the Full Faith and Credit for Child Support Orders Act (FFCCSOA).

exclusive jurisdiction, the state may still enforce the "unsatisfied obligations that accrued before the date on which a modification of the order is made." [74] Thus, if Mr. Linn wishes to challenge the arrears calculation in the 1995 Minnesota Arrearages Order, he must do so in Minnesota. [75]

As discussed above, Minnesota had jurisdiction to enforce its 1983 Child Support Order. It is not for this Court to decide if Minnesota improperly modified its 1983 Child Support Order; it is well settled that an appealable error underlying a final judgment must be corrected by the appellate process of the state entering the order, and not by collateral attack when enforcement is sought in a sister state. [76] Mr. Linn now attempts to improperly assert an error underlying the final judgment entered in Minnesota by collaterally attacking the judgment in Delaware; therefore, Delaware must give Minnesota's order full faith and credit and treat the judgment as "though it were perfectly correct under substantive principles" of Minnesota law. [77]

Although we note that the 1995 Minnesota Arrearages Order may not have accounted for all the support payments made by Mr. Linn, [78] we find that the Delaware Family Court properly rejected Mr. Linn's request to introduce evidence of support payments made before the 1995 Minnesota Arrearages Order reduced the arrears to a judgment. Section 607(a)(6) of UIFSA (1992) states: "[a] party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses: ...(6) full or partial payment has been made ." [79] The Delaware Family Court found that (a)(6) did not authorize "a new or *de novo* hearing to determine what payments were made for the time period in question that the foreign state court considered ... [but did] mean that [it] should determine what payments have been made subsequent to the entry of the foreign order in full or partial satisfaction of the obligation established by the foreign court." [80] The Delaware Family Court stated:

> [i]t is neither in the interests of judicial economy, nor fair to the opposing party, nor logical to require a registering or enforcing state to hold a second hearing on the merits. It would be grossly un-

---

**74.** 28 U.S.C. § 1738B. *See Gentzel v. Williams*, 25 Kan.App.2d 552, 965 P.2d 855, 860–61 (1998).

**75.** The only issue Mr. Linn could have raised after the Minnesota 1995 Arrearages Order became final would have been for a modification of his continuing support obligation from May 1, 1995 until his daughter reached the age of majority. Under UIFSA (1992), Mr. Linn would have had to file in a jurisdiction, where he did not reside, which had personal jurisdiction over Ms. Toman, most likely her domiciliary state, California. Mr. Linn, however, never followed the required action necessary for a modification in Ms. Toman's domiciliary state. Under UIFSA (1992), Mr. Linn could not request the modification in Delaware.

**76.** *Aldrich v. Aldrich*, 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964) (finding that although a Florida trial court had erroneously bound an estate to continue alimony payments without the parties having expressly agreed to such an obligation as required for posthumous payments under state law, a West Virginia trial court was required to give full faith and credit to the alimony decree because the Florida court had personal and subject matter jurisdiction over the issue and its decision had become final after the time for appeal elapsed).

**77.** *Id.* at 543, 84 S.Ct. 1687.

**78.** In Ms. Toman's 1995 motion for arrears in Minnesota, she attached an affidavit listing the amount of child support her records indicated Mr. Linn had paid and specifically noted that her records from June 1987 to December 1989 may have not been complete and that Mr. Linn may have made more payments during those dates. Affidavit of Petitioner, Carol J. Toman, filed in Minnesota, County of Hennepin, District Court, 10th Judicial District, Family Court Division dated March 23, 1995.

**79.** UIFSA § 607(a)(6) (1992); 13 *Del. C.* § 666(a)(6).

**80.** *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997), at 7.

fair for a party, who voluntarily elected not to appear and participate in a hearing on the merits in the Court with subject matter jurisdiction, to now be entitled to a new hearing on the merits in a State not selected by the petitioner or plaintiff.[81]

We agree with the Family Court that to interpret section 607(a)(6) of UIFSA (1992) to allow the Respondent to relitigate the Minnesota Arrearages Judgment Order on the merits in Delaware would be inconsistent with the intent of UIFSA (1992). Because the 1995 Minnesota Arrearage Order was a final judgment, Delaware must give full faith and credit to it and enforce the judgment.[82] Any direct attacks on the judgment must be raised in Minnesota.[83]

## IX. Attorney's Fees

 Finding that Mr. Linn engaged in unnecessary litigation by contesting the registration of Minnesota's 1995 Arrearages Order, the Delaware Family Court granted Ms. Toman's request to assess the attorney's fees she paid in defending this action against Mr. Linn.[84] The court found that although Mr. Linn was personally served and had personal knowledge of the Minnesota proceeding, he did not raise his defenses in Minnesota.[85] The court also found that the issues raised by Mr. Linn were of little merit and the "creative arguments that [he set forth,] required a great deal of research into the statutes of another state, [although] [t]hose statutes... were clear and unambiguous."[86] The court found Mr. Linn's conduct had an adverse financial effect on Ms. Toman. The Family Court relied on the guidelines set forth in *Mays v. Mays*, Del.Supr., 552

A.2d 858 (1988) (ORDER) in awarding Ms. Toman attorney's fees.[87] The court noted that it did not have authority to award attorney's fees for any of the earlier completed proceedings in the Family Court or other Delaware courts.[88] Mr. Linn did not dispute the affidavit submitted by Ms. Toman's attorney detailing the expenses incurred in defending the action.

The Delaware Family Court was authorized to award attorney's fees under *Mays v. Mays* and UIFSA. UIFSA section 313(c) (1992) states:

"The tribunal shall order the payment of costs and reasonable attorney's fees if it determines that a hearing was requested primarily for delay. In a proceeding under Article 6 (Enforcement and Modification of Support Order After Registration), a hearing is presumed to have been requested primarily for delay if a registered support order is confirmed or enforced without change."[89]

The comment to section 313 states: "[s]ubsection (c) provides a sanction to deal with a frivolous contest regarding compliance with an interstate withholding order, registration of a support order, or comparable delaying tactics regarding an appropriate enforcement remedy."[90] Under *Mays*, the Family Court has discretion to assess attorney fees against a party if it finds his conduct has been excessively litigious and that conduct had an adverse financial effect on the opposing party.[91] Although *Mays v. Mays* dealt with divorce proceedings, we believe the rule of law is also applicable in child support proceedings where attorney fees are authorized by

---

**81.** *Id.* at 7–8.

**82.** 28 U.S.C. 1738B; *Aldrich v. Aldrich*, 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964).

**83.** *Aldrich v. Aldrich*, 378 U.S. 540, 84 S.Ct. 1687, 12 L.Ed.2d 1020 (1964).

**84.** *DCSE/Toman v. Linn*, Del.Fam., C.A. No. CN96–06508 (Oct. 15, 1997), at 9–10.

**85.** *Id.*

**86.** *Id.* at 10.

**87.** *Id.*

**88.** *Id.*

**89.** UIFSA § 313(c) (1992); 13 Del. C. § 632.

**90.** UIFSA § 313 cmt. (1992).

**91.** *Mays v. Mays*, Del.Supr., 552 A.2d 858 (1988) Order at 2; *see also, Lee v. Green*, Del.Supr., 574 A.2d 857, 859–60 (1990).

UIFSA (1992). Under the circumstances of this action, we do not believe that the Family Court abused its discretion in awarding Ms. Toman's attorney fees.

## X. Conclusion

The Delaware Family Court's Judgment is therefore AFFIRMED.