764 So.2d 1066 (2000)
Angela JURADO
v.
George Hyot BRASHEAR.
No. 98 CA 2729.
Court of Appeal of Louisiana, First Circuit.
April 17, 2000.
Writ Granted June 23, 2000.
*1068 David P. Oliver, Gulfport, MS, Counsel for defendant/appellant, George Hyot Brashear.
Mary C. Devereux, Covington, for plaintiff/appellee, Angela Jurado.
Before: FOIL, WHIPPLE, GUIDRY, PETTIGREW and CLAIBORNE,[1] JJ.
FOIL, J.
This matter is before us on appeal by defendant/appellant, George Hyot Brashear ("Brashear"), from a judgment of the district court denying his rule for change of custody and ordering him to pay increased child support payments to plaintiff/appellee, *1069 Angela Jurado ("Jurado"). For the following reasons, we affirm.

FACTS AND PROCEDURAL BACKGROUND
Brashear and Jurado are the parents of two minor children, Jonathan Brashear and Justin Brashear.
On July 19, 1995, the Twenty-second Judicial District Court, Parish of St. Tammany, signed a consent judgment granting Jurado sole custody of the children. The judgment also granted Brashear reasonable visitation rights, and ordered him to pay child support, maintain medical insurance and pay certain medical expenses for the children.
At the time the consent judgment was signed, Jurado and her children resided in St. Tammany Parish, Louisiana, and Brashear was a resident of Jackson County, Mississippi, where he has resided since 1992. In April 1997, subsequent to the signing of the consent judgment, Jurado and her children moved to Ohio.
On October 8, 1997, Jurado filed a rule in the Twenty-second Judicial District Court, seeking an increase in child support based upon an alleged increase in Brashear's income. Brashear was served process pursuant to the Louisiana Long Arm Statute, LSA-R.S. 13:3201 and 3204.
On November 3, 1997, by special appearance, Brashear filed exceptions to the court's personal jurisdiction over him, to the court's subject matter jurisdiction, and for improper service of process. After a hearing on the exceptions, the trial court denied all exceptions.[2] Although Brashear filed a notice of intention to apply for supervisory writs, he never actually filed an application for supervisory writs concerning the trial court's denial of his exceptions.
Thereafter, on December 9, 1997, more than six months after Jurado and the children had moved to Ohio, Brashear filed a Rule for Change of Custody. After a hearing on the merits of Jurado's rule to increase child support and Brashear's rule to change custody, by judgment signed on August 20, 1998, the court increased child support to the amount of $1,046.00 per month, maintained sole custody of the children with Jurado, and increased Brashear's visitation with the children.[3]
Brashear now appeals the judgment of the trial court. Although he does not separately list any assignments of error, through his brief to this court, Brashear argues that: (1) the trial court lacked personal jurisdiction over him; (2) service of process upon him was improper; and (3) the trial court lacked subject matter jurisdiction to adjudicate any of the matters before it.

I. SUBJECT MATTER JURISDICTION
Because a judgment rendered by a court without subject matter jurisdiction is void, Whittenberg v. Whittenberg, 97-1424, p. 2 (La.App. 1st Cir.4/8/98), 710 So.2d 1157, 1158, we must first address Brashear's argument that the trial court lacked subject matter jurisdiction over all matters before it. Brashear contends that the trial court was without subject matter jurisdiction to decide either the child support issue or the child custody issue in view of the fact that neither the parties nor their children are domiciled in Louisiana.
*1070 A court's subject matter jurisdiction is its legal power and authority to hear and determine a particular class of actions or proceedings. LSA-C.C.P art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties, and a judgment rendered by a court that lacks subject matter jurisdiction is void. LSA-C.C.P. art. 3. Subject matter jurisdiction with regard to the issue of child support is governed by Louisiana's version of the Uniform Interstate Family Support Act (UIFSA), LSA-Ch.C. art. 1301.1, et seq., while the issue of subject matter jurisdiction over the issue of custody modification herein is governed by the provisions of Louisiana's version of the Uniform Child Custody Jurisdiction Act (UCCJA), LSA-R.S. 13:1700, et seq. Because the requirements for a court to have continuing subject matter jurisdiction under UIFSA are different from those under UCCJA, we must separately determine whether the trial court retained subject matter jurisdiction to modify its prior judgment as to the issues of (1) child support and (2) child custody and visitation.

A. CHILD SUPPORT:

Subject Matter Jurisdiction under UIFSA

1.) History of the Act
Before addressing subject matter jurisdiction under UIFSA, we feel it is necessary to give a brief history of this relatively new act. The Uniform Interstate Family Support Act (UIFSA) was developed by the American Bar Association (ABA) to provide a common child support enforcement mechanism as well as a common mechanism for actions for modification of child support awards. Tim Graves, Comment, Child Support Guidelines Encourage Forum Shopping, 37 Duq. L.Rev. 287, Introduction (1999). The ABA developed UIFSA in an attempt to solve some of the problems encountered under the Uniform Reciprocal Enforcement of Support Act (URESA). National Developments, Uniformed Interstate Family Support Acts Endorsed By ABA, 13 No. 3 FairShare 26 (1993). One of the problems, which was identified under URESA, was the exercise of modification jurisdiction over a child support award by more than one state. 13 No. 3 FairShare at 26. Thus, UIFSA attempts to limit modification jurisdiction to just one state at a time, once there is an existing child support award issued. 13 No. 3 FairShare at 27.
"UIFSA embodies a policy of `one order, one time, one place': there can be only one controlling order." Jane E. Atkinson & Laura W. Morgan, The Uniform Interstate Family Support Act: 1999 Comprehensive Update, 11 No. 9 Divorce Litig. 173, Section I (1999). To carry out this new policy, the act, in section 205,[4] establishes a rule of "continuing exclusive jurisdiction" (which may also be referred to as "CEJ") to determine the controlling state for either issuance, enforcement or modification of an award.

2.) Louisiana's Codification of UIFSA's Jurisdiction Articles
Effective January 1, 1996, UIFSA was adopted by the Louisiana legislature by Acts 1995, No. 251. This act repealed Louisiana's Uniform Reciprocal Enforcement of Support Act (URESA) (formerly LSA-Ch.C. arts. 1301 to 1342) and replaced *1071 it with UIFSA, LSA-Ch.C. arts. 1301.1 to 1308.2. According to LSA-Ch.C. art. 1301.2, Louisiana's adapted version of UIFSA shall be applied and construed to effectuate its general purpose to make uniform the law with respect to interstate family support actions among the states.
Thus, we must determine whether the trial court had subject matter jurisdiction over modification of the child support order under UIFSA when none of the parties continued to reside in this state.[5] Subject matter jurisdiction for modification of an award pursuant to UIFSA is addressed in sections 205, 206, and 609-614 of the act. These sections were enacted respectively as LSA-Ch.C. arts. 1302.5, 1302.6 and 1306.9-1306.14. In order to determine whether a trial court retains continuing, exclusive jurisdiction, these articles must be interpreted in reference to each other. LSA-C.C. art.13.[6]
As noted above, the concept of continuing exclusive jurisdiction is at the heart of the determination of which state has authority to modify an award. Predictably, LSA-Ch.C. art. 1302.5(A), defining continuing exclusive jurisdiction, reads substantially similar to section 205(a) of the uniform act, as follows:
Art. 1302.5. Continuing, exclusive jurisdiction
A. A tribunal of this state issuing a support order consistent with the laws of this state has continuing, exclusive jurisdiction over a child support order as follows:
(1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued.
(2) Until all of the parties who are individuals have filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
The only difference between UIFSA section 205(a) and LSA-Ch.C. art. 1302.5(A) is that the Louisiana article does not include "or." Instead, as adopted, the Louisiana article contains a period between sub-paragraphs (1) and (2). Nonetheless, we conclude that the correct interpretation of LSA-Ch.C. art. 1302.5, as adopted in Louisiana, requires that sub-paragraphs (1) and (2) be read disjunctively, or as though an "or" were placed between the two sub-paragraphs.[7]
Relying solely on this article, Brashear argues that because all the parties have left the state, the conditions allowing for CEJ no longer exist, and consequently, Louisiana no longer has CEJ to modify (increase) his child support obligation.

3.) Determining Subject Matter Jurisdiction for Modification Herein
At the outset we deem it paramount to point out that there are no reported *1072 cases on point in Louisiana presenting this factual scenario.[8] However, this issue has been discussed and addressed in other state courts and in legal publications.
One such discussion is found in an excerpt from Jane E. Atkinson & Laura W. Morgan, The Uniform Interstate Family Support Act: 1999 Comprehensive Update, 11 No. 9 Divorce Litig. 173, Section 11(B)(1) (1999):
Although UIFSA is not entirely clear on this point, official comments show that the drafters believed that an issuing court would lose subject matter jurisdiction to modify its order after the obligor, the obligee, and all of the children permanently relocated outside of the state. UIFSA 205cmt. A majority of courts which have addressed this issue agree that the issuing court does not retain jurisdiction to modify a child support order after all of the participants have left to state.
An argument can be made, however, that until another state modifies an order the issuing state retains continuing exclusive jurisdiction to modify the order, even after the parties have left the state. The analysis is as follows: Once all the parties have left the state, any state can assume jurisdiction to modify the order, so long as the personal jurisdiction requirements are met. Since the issuing state has personal jurisdiction over the parties, it can modify the order until another state modifies the order. It was on this reasoning that a Virginia court found that it retained jurisdiction to modify a child support order after the parents and the children had relocated in India. Karimi v. Karimi, No. 1416-97-3, 1998 WL 313412, 1998 Va.App. LEXIS 349 (Va. Ct.App. June 16, 1998). In Karimi, the parents' Virginia divorce decree granted the mother the custody of the children and ordered the father to pay child support. After the decree was entered, the mother and the children relocated to India. Some time later, after the father lost his job and returned to India, he asked the divorce court to abate his child support obligation in order to force the mother to seek child support in an Indian court. He claimed that he was entitled to a reduction in the amount of child support because the cost of living was lower in India, and he averred that he could not seek modification in India because Indian law does not permit a noncustodial party to file a child support petition. The father asserted that he was seeking custody in an Indian court and that an Indian court lacked authority to order him to pay child support.
The trial court abated the father's child support obligation, finding that it was no longer appropriate for the Virginia court to order support, and the mother appealed. The court of appeals reversed, finding that the trial court had left the mother and children without support and holding that, under UIFSA § 205, the issuing court retains jurisdiction to modify its order until another state modifies the order according to the Act, even after all of the parties have left the state.
(Emphasis added; citations omitted).
The Delaware Supreme Court has also discussed UIFSA jurisdiction in detail in the case of Linn v. Delaware Child Support Enforcement, 736 A.2d 954 (Del.1999). In Linn, the Delaware court addressed the issue of whether Minnesota, the state that originally awarded support, had continuing, exclusive jurisdiction to enforce that award through an order of arrearages when none of the parties continued to reside in Minnesota.
*1073 In Linn, an amicus curiae brief was filed by the National Conference of Commissioners on Uniform State Laws. The court adopted and agreed with the Commissioners' suggestions regarding interpretation of the act, summarizing the interpretation the court was adopting, as follows:
The Amicus suggests that when sections 205, 206, 611, and 612 of the Uniform Interstate Family Support Act (1992) are read together the sections mean:
[A] tribunal that enters a child support order has continuing, exclusive jurisdiction over the support order if that state remains the residence of the obligor, the individual obligee or the child; or a tribunal that has continuing, exclusive jurisdiction over a child support order will be divested of that continuing, exclusive jurisdiction if:
A) the obligor, the individual obligee, and the child leave the issuing state and another state assumes continuing, exclusive jurisdiction over the child support order in accordance with the terms of §§ 609-614; or
B) all the individual parties file written consents with the issuing tribunal for a tribunal of another state to assume continuing, exclusive jurisdiction over the subject matter so that it may modify the order.
Linn, 736 A.2d at 960 (emphasis added; footnotes omitted).
On review, we, like the court in Linn, find that while the parties and children have left the state, neither Jurado nor Brashear have availed themselves of any other court's jurisdiction.
As noted in Linn:
UIFSA (1992) provides that the issuing state does not lose its power to enforce the existing order until another state properly exercises its jurisdiction and modifies the issuing state's order. Section 207 states: "[i]f only one tribunal has issued a child support order, the order of that tribunal must be recognized." Although not dispositive, the revised comment to Section 207 UIFSA (1996) confirms this interpretation: "[s]ubsection (a) declares that if only one child support order exists, it is to be denominated the controlling order, irrespective of when and where it was issued and whether any of the individual parties and the child continued to reside in the issuing state." We agree with the Amicus that, section 205 and 207 are read together, they provide that when only one order has been issued that order controls, and the issuing tribunal is authorized to enforce its order if no other state has assumed continuing, exclusive jurisdiction.
Linn, 736 A.2d at 963-964 (emphasis added; footnotes omitted). Although the court in Linn found it was not faced with the issue of determining whether Minnesota had continuing, exclusive jurisdiction to modify (as opposed to enforce) the Minnesota order, we find the court's analysis therein equally applicable to the issue before us: Was there CEJ herein for the trial court to modify Brashear's child support obligation once the parties and children left this state?
As set forth in Linn, "The one-order remains in effect until it is properly modified in accordance with the narrow terms of the Act, see Sections 609-612." Linn, 736 A.2d at 962 (footnote omitted).
Louisiana Children's Code articles 1306.9 through 1306.14 (the codification of sections 609-614 of UIFSA) provide the process for registration of a child support order in another state. In particular, LSA-Ch.C. art. 1306.11 provides in part:
Art. 1306.11 Modification of child support order of another state
A. After a child support order issued in another state has been registered in this state, the responding tribunal of this state may modify that order only if Article 1306.13 (Jurisdiction to modify child support order of another state when individual parties reside in this state) does *1074 not apply and, after notice and hearing, it finds that either:
(1) All of the following requirements are met:
(a) The child, the individual obligee, and the obligor do not reside in the issuing state.
(b) A petitioner who is a nonresident of this state seeks modification.
(c) The respondent is subject to the personal jurisdiction of the tribunal of this state.
Therefore, LSA-Ch.C. art. 1306.11 presumes that the responding state may assume jurisdiction to modify an award only after the order is registered in that state.[9]
In the absence of compliance with these registration provisions, no other state may assume CEJ for the purposes of modification. See LSA-Ch.C. arts. 1306.9-1306.14. Moreover, LSA-Ch.C. art. 1302.5(B) provides as follows:
A tribunal of this state issuing a child support order consistent with the law of this state may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to this Chapter or a law substantially similar to this Chapter.
Thus, reading subsection (B) of LSA-Ch.C. art. 1302.5 in conjunction with LSA-Ch.C. arts. 1306.9-1306.14, the issuing state, Louisiana, does not lose continuing, exclusive jurisdiction to modify an order until that order has been properly registered in another tribunal for purposes of modification.
While LSA-Ch.C. arts. 1306.9-1306.14 provide for registration and modification procedures of child support orders in states other than the issuing state, the parties in the case at hand did not utilize these procedures. The record is devoid of evidence that either party attempted to have the Louisiana child support order registered in another state for enforcement or modification. Therefore, we conclude that Louisiana maintains continuing, exclusive jurisdiction over the order until such time as a party exercises the right to register the order, as statutorily provided, in another state for purposes of modification.
The comments to section 205 of UIFSA acknowledge that the statute is silent as to the issue of maintaining CEJ for modification once the parties have left the state. "Although Subsection (a) identifies the methods for the retention and the loss of continuing, exclusive jurisdiction by the issuing tribunal, it does not confer jurisdiction to modify on another tribunal. Modification requires that a tribunal have personal jurisdiction over the parties and meet other criteria as provided in Sections 609-614, infra." UIFSA § 205, comment (emphasis added).
We conclude that, absent any evidence that the order has been registered in another tribunal, Louisiana retains continuing, exclusive jurisdiction to modify its order.

B. CUSTODY AND VISITATION:

Subject Matter Jurisdiction Under UCCJA
Having concluded that Louisiana retains continuing, exclusive jurisdiction to modify its support order, we address Brashear's claim that the trial court lacked subject matter jurisdiction to adjudicate the issue of child custody. Even though *1075 Brashear filed the rule seeking a change in custody or alternatively, expanded visitation, he now complains that the trial court lacked subject matter jurisdiction to grant him part of the relief he asked for on the basis that neither he, Jurado or the children were residents of Louisiana at the time the Louisiana proceedings were commenced.
In 1978, Louisiana adopted the Uniform Child Custody Jurisdiction Act. La. Acts 1978, No. 513. This uniform law was proposed by the National Conference of Commissioners "[i]n order to provide some stability to reasoned custody decrees by discouraging relitigation, to deter custody determinations by physical abduction, to avoid jurisdictional competition and conflicting custody decrees in several states, and primarily to attain the security of home environment necessary for a child's well being[.]" Revere v. Revere, 389 So.2d 1277, 1279 (La.1980). Additionally, one primary purpose of the uniform law is to promote the resolution of custody disputes by the forum deemed most likely to have the maximum amount of relevant information about the case. Whittenberg, 97-1424 at p. 3, 710 So.2d at 1159. In the instant case, the trial court modified Brashear's visitation rights. We note that UCCJA applies to the determination of visitation rights as well as custody determinations. Girau v. Girau, 545 So.2d 670, 673 (La. App. 5th Cir.1989).
Under UCCJA, a Louisiana court that is otherwise competent to adjudicate child custody, has jurisdiction to render initial decrees or modifications in two principal situations: (1) when Louisiana is the child's "home state"; and (2) when the child and at least one contestant have a "significant connection" with Louisiana so that it is in the child's best interest for Louisiana to assert jurisdiction. LSA-R.S. 13:1702(A)(1) and (2); Revere, 389 So.2d at 1279.
The "significant connection" standard is a more flexible jurisdiction test which is based on strong contacts of the child and the contestant with the state in which the proceeding is commenced. This standard provides a "best interest" basis for maintaining jurisdiction when Louisiana has a legitimate concern as to custody and has superior access to evidence concerning the child's care, training, well being and personal relationships. Revere, 389 So.2d at 1279-1280.
We have already concluded that Louisiana has exclusive subject matter jurisdiction to rule on Jurado's claim for increased child support. At the time Brashear commenced his action for modification of the custody decree, Louisiana clearly had a significant connection with the parties, who both submitted to the personal jurisdiction of the Louisiana court by asking the court to modify its previously issued support and custody orders. We find nothing in UCCJA which would divest a Louisiana trial court of subject matter jurisdiction to modify its original custody decree where the court is entertaining modification of its previously issued child support order. It is in the best interest of the children and the parties to litigate these issues in the same forum, before a court that is familiar with the parties and the evidence in the case. Therefore, we conclude that the trial court had subject matter jurisdiction to address Brashear's rule for modification of the child custody order, and did have the authority to increase his visitation rights.

II. PERSONAL JURISDICTION
Brashear further contends that the trial court did not have personal jurisdiction over him with regard to Jurado's rule to modify child support and, therefore, erred in refusing to sustain the declinatory exception. LSA-C.C.P. art. 925. In view of the fact that service was accomplished pursuant to the Louisiana Long Arm Statute, LSA-R.S. 13:3201, Brashear asserts that the statute does not confer jurisdiction over him. However, UIFSA applies and is controlling on the issue of personal jurisdiction herein. The relevant *1076 provision, as codified in LSA-Ch.C. art. 1302.1, et seq., sets forth, in pertinent part:
In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual, or his tutor, in any of the following situations:
* * *
(2) The individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any exception or contest to personal jurisdiction.
* * *
(8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.
Jurisdiction over the person is the legal power of the court to render a personal judgment against a party to an action or proceeding. Imperial v. Hardy, 302 So.2d 5, 7 (La.1974). The Louisiana Code of Civil Procedure recognizes that the submission of a party to the exercise of jurisdiction over him personally by the court provides grounds for exercising such jurisdiction. LSA-C.C.P. art. 6; see also DeFatta v. DeFatta, 352 So.2d 287 (La. App. 2nd Cir.1977).
In the instant case, Brashear and Jurado entered into a consent judgment, signed on July 25, 1995 in the Louisiana proceedings, which set child support and custody. For a period of approximately two years, Brashear complied with the consent judgment and made child support payments pursuant to its dictates. By entering into the consent judgment rendered by a Louisiana court, Brashear consented to the exercise of personal jurisdiction by the court over him in the initial judgment setting child support and awarding custody.
It is a well settled principle of law in Louisiana that in child support and alimony matters, a court having jurisdiction to grant such an award retains jurisdiction over the person of a nonresident defendant to modify an award or to enter an award for damages. Warren v. Warren, 622 So.2d 864, 866 (La.App. 4th Cir.1993); In re Spence, 600 So.2d 782, 783 (La.App. 5th Cir.1992); Holden v. Holden, 374 So.2d 749, 752 (La.App. 3rd Cir.1979); Webb v. Webb, 357 So.2d 1288, 1292 (La. App. 3rd Cir.1978); DeFatta, 352 So.2d at 291; Imperial, 302 So.2d at 8; cf. State, Through Department of Health and Human Resources v. King, 447 So.2d 557, 559 (La.App. 1st Cir.1984). Thus, the Louisiana court that signed the consent judgment granting the child support award had jurisdiction over Brashear by virtue of his consent to the court's jurisdiction, and had continuing personal jurisdiction over Brashear in order to modify the decree.
Clearly, based upon LSA-Ch.C. art. 1302.1 or LSA-R.S. 13:3201(B), the Long Arm Statute, the Louisiana court had personal jurisdiction over Brashear. Thus, the trial court properly denied Brashear's exception to personal jurisdiction.

III. SUFFICIENCY OF SERVICE OF PROCESS
Finally, Brashear contends that the trial court erred in denying his declinatory exception of insufficient service of process. LSA-C.C.P. art. 925. In this case, service was accomplished through domiciliary service by certified mail pursuant to the Long Arm Statute, LSA-R.S. 13:3204. Appellant contends that because a "stranger" to these proceedings, presumably Brashear's wife, signed the return receipt, service was not accomplished properly or in accordance with the Long Arm Statute.
Louisiana Revised Statute 13:3204 sets forth the requirements for service of process when using the Long Arm Statute. Paragraph (A) of Section 3204 provides in part:
A certified copy of the citation and of the petition in a suit under R.S. 13:3201 *1077 shall be sent by counsel for the plaintiff... to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the Court in which the suit is filed[.]
The requirements of this section, i.e., that a certified copy of the citation and petition be sent by counsel for plaintiff to defendant by registered or certified mail or actually delivered to defendant, are mandatory. Ray v. South Central Bell Telephone Company, 315 So.2d 759, 761 (La.1975). This section has been carefully drafted into the scheme of LSA-R.S. 13:3201, et seq., to insure that Louisiana's "long arm" provisions meet the constitutional mandate of due process which requires a method of service reasonably calculated to give defendant actual notice. However, "the language of [LSA-R.S.] 13:3204 does not require that the defendant actually accept the petition and citation, but only that the proper steps be taken in order that he might have a reasonable opportunity to do so." Ray v. South Central Bell Telephone Company, 303 So.2d 877, 880 (La.App. 1st Cir.1974), affirmed, 315 So.2d 759 (La.1975) (emphasis added). As previously interpreted by this court:
[A]ll that is necessary to constitute service upon a non-resident under the `Long Arm' statute is that counsel for plaintiff send a certified copy of the citation and of the petition in the suit to the defendant by registered or certified mail (or actually deliver it in person). There is no provision against domiciliary service and no requirement for a signed return receipt.... To allow a defendant to defeat service of process by refusing to accept a registered letter or to allow a member of his family to receive it for him ineffectually would make a mockery of R.S. 13:3204 and render it completely ineffective.
Thomas Organ Company v. Universal Music Company, 261 So.2d 323, 327 (La. App. 1st Cir.1972) (emphasis added).
Brashear admits that an envelope containing the Rule for Increase was received at his domiciliary establishment and that the receipt was signed. However, Brashear claims the service was insufficient inasmuch as a third party signed the receipt. We find this argument is without merit because LSA-R.S. 13:3204 requires only that the proper steps be taken in order that defendant might have a reasonable opportunity to accept the citation and the petition. Ray, 303 So.2d at 880.
In addition to the admission of Brashear that a person in his home accepted delivery of the envelope and signed the receipt, plaintiffs affidavit verifying service is contained in the record in compliance with the requirements of LSA-R.S. 13:3204. See LSA-R.S. 13:3205; cf. Collier v. Fugler, 29,457, pp. 2-4 (La.App. 2nd Cir.5/7/97), 694 So.2d 553, 554-556.
Moreover, the envelope containing the Rule to Increase Child Support was received on October 18, 1997, as evidenced by the return receipt and the affidavit of service contained in the record. By special appearance, Brashear's attorney filed exceptions to the court's jurisdiction and the service of process on November 5, 1997.
Accordingly, we conclude that defendant had actual and sufficient notice of the Rule to Increase Child Support filed by Jurado, which was sent to him in compliance with the requirements of LSA-R.S. 13:3204. See State Farm Mutual Automobile Insurance Company v. Vidrine, 348 So.2d 422, 424-425 (La.App. 3rd Cir.1977). Therefore, we find that the trial court correctly dismissed the exception of insufficient service of process.

CONCLUSION
For the above and foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant/appellant, George Hyot Brashear.
AFFIRMED.
*1078 WHIPPLE, J., concurs in part and dissents in part, for reasons assigned.
GUIDRY, J., concurs in part and dissents in part, for the reasons assigned by WHIPPLE, J., which he adopts as his own.
WHIPPLE, J., concurring in part and dissenting in part.
As the majority correctly notes, a Louisiana court that is otherwise competent to adjudicate child custody has jurisdiction to render initial decrees or modifications in two principal situations: (1) when Louisiana is the child's "home state"; and (2) when the child and at least one contestant have a "significant connection" with Louisiana so that it is in the child's best interest for Louisiana to assert jurisdiction. LSA-R.S. 13:1702(A)(1) and (2); Revere v. Revere, 389 So.2d 1277, 1279 (La.1980).
Under the "home state" standard, a Louisiana court has jurisdiction to adjudicate custody issues if it is the home state of the child at the commencement of the proceeding or has been the child's home state within six months prior to commencement of the proceeding. LSA-R.S. 13:1702(A)(1); Whittenberg v. Whittenberg, 97-1424, p. 2 (La.App. 1st Cir.4/8/98), 710 So.2d 1157, 1159-1160. "Home state" is defined in LSA-R.S. 13:1701(5) as the state in which "the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent for at least six consecutive months." (Emphasis added).
Clearly, Ohio is the children's home state in the instant case inasmuch as the children and Jurado were living in Ohio for over six months prior to the commencement of the present rule to change custody filed by Brashear. See Whittenberg, 97-1424 at p. 4, 710 So.2d at 1159-1160; Stanley v. Stanley, 98-465, p. 3 (La.App. 3rd Cir.10/21/98), 720 So.2d 740, 742. Therefore, Louisiana is not the home state, and the trial court could not assume subject matter jurisdiction on this basis.
Because subject matter jurisdiction clearly is non-existent herein under the "home state" standard, the majority's decision to affirm must rest upon the conclusion that the district court had subject matter jurisdiction based upon the "significant connection" standard.
As the majority correctly notes, the "significant connection" standard is a more flexible jurisdiction test, but it is based on strong contacts of the child and the contestant with the particular state in which the proceeding is commenced. Thus, to exercise jurisdiction over custody and visitation issues, a showing must be made that Louisiana has a legitimate concern with and "superior access" to evidence concerning the child's care, training, well being and personal relationships. Revere, 389 So.2d at 1279-1280.
In this case, it is difficult to see how Louisiana has any legitimate concern as to the custody/visitation rights of Jurado and Brashear with their two children. The record indicates that although Jurado and the children lived in St. Tammany Parish, Louisiana for a brief period of time after the original custody degree was rendered, they moved to Ohio three years ago, in April of 1997. The Jurados bought a house in Ohio, and, based on the testimony at the trial on the merits, it is apparent they intend to continue to reside there permanently.
Moreover, while Brashear lived in Louisiana at the time the second child was born in 1988, the record indicates that he moved to Mississippi in 1992. Therefore, at the time Brashear filed a rule to change custody in St. Tammany Parish, he had not lived in Louisiana for over five years, and there is no evidence of record herein to establish any connection whatsoever with Louisiana once he and the children left Louisiana.
Additionally, there is no evidence in the record of any teacher, care-giver or other relative of the children still residing in Louisiana. Based upon the facts in the record before us, there is no showing *1079 whatsoever of any connection, significant or otherwise, of either party or these children with Louisiana. See Whittenberg, 97-1424 at pp. 4-5, 710 So.2d at 1160; see also Stanley, 98-465 at pp. 3-4, 720 So.2d at 742.
Moreover, the approach taken by the majority herein is contrary to the interpretation of the UCCJA set forth in the published opinion of this court in Whittenberg. Absent en banc consideration by this court, overruling this court's published decision in, Whittenberg, I feel we are bound by its dictates.
Thus, considering the foregoing, I can only conclude that the trial court lacked subject matter jurisdiction to modify the previous custody and visitation order pursuant to UCCJA under either the "home state" standard or the "significant connection" standard of LSA-R.S. 13:1702, which we are obligated to apply. To hold otherwise, and allow a party to avail himself of the jurisdiction of a Louisiana tribunal, where there is no basis except some past connexity, as the majority allows herein, renders the UCCJA meaningless and useless.
Accordingly, I respectfully dissent in part and would find that the portion of the trial court's judgment that modified Brashear's visitation is null.
NOTES
[1] Retired Judge Ian W. Claiborne is sitting pro tempore by special appointment of the Louisiana Supreme Court.
[2] No transcript of the hearing on the exceptions appears in the record before us.
[3] Although the judgment is entitled "Stipulated Judgment on Rule," it is clear from the record that the judgment does not constitute a transaction or compromise, which would restrict the grounds upon which the judgment could be attacked. See Walton v. Walton, 597 So.2d 479, 483-484 (La.App. 1st Cir.1992). The parties did not stipulate, in open court or in writing, to the specific terms of the judgment, as required to confect a transaction or compromise. LSA-C.C. art. 3071. Rather, the parties entered into certain stipulations of fact regarding Brashear's income.
[4] That section provides, in pertinent part:

§ 205. Continuing, Exclusive Jurisdiction. (a) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a child-support order:
(1) as long as this State remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
(2) until all of the parties who are individuals have filed written consent with the tribunal of this State for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.
[5] It is well established that continuous exclusive jurisdiction remains in the issuing state for enforcement purposes if neither party has attempted to register the order in another state. Linn v. Delaware Child Support Enforcement, 736 A.2d 954, 963 (Del.1999); Commonwealth of Virginia, Virginia Department of Social Services, Division of Child Support Enforcement, ex rel. Kenitzer v. Richter, 23 Va.App. 186, 193, 475 S.E.2d 817, 820 (1996); UIFSA § 205, comment.
[6] Louisiana Civil Code article 13 provides, "Laws on the same subject matter must be interpreted in reference to each other."
[7] When the language of a law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examination of the context in which they occur and the text of the law as a whole. Hutchinson v. Patel, 93-2156, pp. 5-6 (La.5/23/94), 637 So.2d 415, 420; see also, LSA-C.C. arts. 10 and 12. Because the legislature clearly stated in LSA-Ch.C. art. 1301.2 that Louisiana's version of UIFSA was to be construed to effectuate its general purpose to make uniform the law with respect to interstate family support actions among the states enacting UIFSA, we find that the appropriate interpretation of LSA-Ch.C. art. 1302.5 is to interpret it as the uniform act is written and read sub-paragraphs (1) and (2) disjunctively.
[8] There is little guidance in Louisiana regarding modification and enforcement of an original child support order where all parties have left the state and have not invoked jurisdiction in another state pursuant to UIFSA, much less when all parties have left the state without invoking another court's jurisdiction and then return to the issuing state that has CEJ and submit themselves to the original court's jurisdiction once again.
[9] The comments to UIFSA section 611, the section corresponding to LSA-Ch.C. art. 1306.11, state:

As long as the issuing state retains its continuing, exclusive jurisdiction over its child support order, a registering sister state is precluded from modifying that order. This is a very significant departure from the multiple-order, multiple-modification system of RURESA. However, if the issuing state no longer has a sufficient interest in the modification of its order under the factual circumstances described in this section, after registration [,] the responding state may assume the power to modify. (Emphasis added).